IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROSA ZUBIA, et al.,

          Plaintiffs,

vs.                                                  Civ. No.  14 - 0380 JH/GBW

**DENVER CITY, a political subdivision of the State of Texas, et al.,**

          **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the *Yoakum County Defendants' Motion and Brief to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6)* [Doc. 46]. In the motion, the defendants argue that Plaintiffs' *Second Amended Complaint* [Doc. 42] fails to allege sufficient facts to state a claim against the Board of County Commissioners of Yoakum County (hereafter, "Yoakum County,"), Yoakum County Sheriff's Office ("YCSO"), Donald L. Corzine ("Corzine"), and Kelly Williamson ("Williamson"). The Court will refer to them collectively as the "Yoakum County defendants." After reviewing the facts alleged in the amended complaint and the relevant law, as well as the motion, response, and reply briefs, the Court concludes that the motion to dismiss should be granted as explained herein.

## LEGAL STANDARD

The Defendants move to dismiss all of Plaintiffs' claims under Rule 12(b)(6) on the basis that the Second Amended Complaint ("SAC") fails to state a claim against them and under Rule 12(b)(1) on the basis that the Court lacks subject matter jurisdiction.

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]e assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, in ruling on the motion to dismiss, the Court considers only the allegations in the pleadings. Rule 12(d) requires that "[i]f . . . matters outside the pleadings are presented to . . . the court, the motion must be treated as one for summary judgment." "The failure to convert a 12(b)(6) motion to one for summary judgment where a court does not exclude outside materials is reversible error unless the dismissal can be justified without considering the outside materials." *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

In contrast, a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. The Court therefore must make its own findings of fact. In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id*. The Court's reliance on "evidence outside the

2

pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule 12(b)(1) into a motion for summary judgment pursuant to Rule 56.

## RELEVANT FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT[1]

Plaintiffs are residents of Yoakum County, Texas, and their decedent, Amy Reyna, was a resident of Hobbs, New Mexico. SAC at ¶ 1. The Board of County Commissioners of Yoakum County, Texas, is the appropriate party for actions brought against Yoakum County, a political subdivision of the State of Texas. *Id.* at ¶ 9. Donald L. Corzine is the Yoakum County Sheriff. *Id.* at ¶ 11. Kelly Williamson is a deputy with the Yoakum County Sheriff's Office. *Id.* at ¶ 12. Corzine and Williamson are residents of Yoakum County *Id.* at ¶ 13.

On the afternoon of Sunday, October 27, 2013, three law enforcement officers met at the Stripes convenience store in Denver City, Texas. *Id.* at ¶ 32. They were Officer Ryan Taylor ("Taylor") of the Denver City, Texas, police department, along with Williamson and Shawn Bradley ("Bradley"), both of the Yoakum County Sheriff's Department. *Id.* Taylor informed Williamson and Bradley that there was an arrest warrant for Reyna for her failure to comply with the terms of her probation, and that she had been seen around town. *Id.* at ¶ 34. Reyna had not committed a violent crime, nor was there any indication that she was about to commit any crime. *Id.* at ¶ 35. Approximately ten minutes after this meeting, Taylor radioed that he had spotted Reyna and informed all units that he was in pursuit of a dark green Nissan Altima. *Id.* at ¶ 36. Taylor pursued the Altima, and shortly thereafter the driver pulled over, got out of the car, and surrendered to Bradley. *Id.* at ¶ 37. Reyna, who apparently had been a passenger in the Altima,

---

[1] In their response brief, Plaintiffs have asserted additional facts not pled in the SAC. Plaintiffs also have attached to their response and relied upon Williamson's incident report, a document neither attached to nor cited in the SAC. Because this is a motion to dismiss under Rule 12(b)(6), the Court will not consider neither these additional facts nor the incident report, but rather rely solely upon the allegations in the SAC.

then got into the Altima's driver's seat and fled on F.M. 1757 toward New Mexico. *Id*. at ¶ 38. Taylor and Williamson pursued her, along with Denver City Police Chief Jack Miller. *Id*. Using his radio, Taylor informed law enforcement in Lea County, New Mexico, of the pursuit that was moving in their direction. *Id*. at ¶ 39. As a result, deputies from the Lea County Sheriff's Department ("LCSD") were dispatched toward the state line. *Id*. at ¶ 40.

Reyna entered New Mexico on Highway 133, traveling at speeds over 80 mph. *Id*. at ¶ 41. At that point, deputies from LCSD joined in the pursuit, *id*., though they did not instruct the Texas law enforcement agencies to cease pursing Reyna. *Id*. at 43. In an attempt to stop Reyna, LCSD placed spike strips across Highway 133. However, Reyna avoided the strips and turned onto Highway 132 heading south. *Id*. at ¶ 44. Shortly after passing mile marker 10, Reyna lost control of the Altima, went through a barbed wire fence, and entered an open field, disabling her vehicle. *Id*. at ¶ 46. LCSD Deputy Andy Dominguez parked his patrol unit a few yards behind the Altima, while Williamson parked his unit on the right rear passenger side of the Altima. *Id*. at ¶ 48.

Taylor parked his unit on the driver's side of the Altima "and without hesitation got out of his unit, drew his duty weapon, walked right up to the front of Reyna's vehicle and fired three rounds into the hood of the vehicle and four rounds into Reyna. Amy Reyna was killed instantly." *Id*. at ¶ 49. There was no indication that Reyna had a weapon, and officers found no weapon in the Altima. *Id*. at ¶ 50.

Plaintiffs assert several causes of action against the Yoakum County defendants. In Count I, a *Monell* claim for municipal liability, they allege that the violation of Reyna's rights was perpetrated pursuant to the custom and policy of the YCSO. Plaintiffs allege that the YCSO either maintains official policies of directing, encouraging, or permitting their deputies to engage

in the use of excessive force or, in the alternative, maintains a de facto policy of ignoring such actions by its deputies. *Id*. at ¶ 55-59. In Count II, another *Monell* claim, Plaintiffs allege that the YCSO failed to adequately train or supervise its deputies, and that such failure was a "moving force" behind its deputies' illegal acts. *Id*. at ¶ 62, 68-70. Count III, another *Monell* claim asserting a failure to train and supervise by YCSO, appears duplicative of Count II in terms of its factual allegations. In Count VII, Plaintiffs assert a claim of wrongful death against Yoakum County, asserting that its deputies caused the death of Amy Reyna. Plaintiffs allege:

> Just minutes prior to the death of Amy Reyna, Deputies from the YCSO were informed by Defendant Taylor that Amy Reyna was wanted for a probation violation. Knowing that Amy Reyna had not committed a violent crime and no crime was about to be committed, the Deputies of YCSO had a duty to intervene when it became obvious that Defendant Taylor was attempting to apprehend a non-violent suspect with the use of deadly force.

*Id*. at ¶ 99. Plaintiff's further allege that Reyna would not have died but for the acts and neglect of YCSO. *Id*. at ¶ 100. In Count VIII, a claim of negligence or gross negligence, Plaintiffs allege that the Yoakum County defendants owed and breached a duty of care to the public and to the Plaintiffs to properly execute an arrest warrant and to apply only the force reasonably necessary to do so. *Id*. at ¶ 102-04. They further allege that Defendants' negligence or gross negligence caused the death of Amy Reyna. *Id*. at ¶ 106. Finally, in Count IX(E), Plaintiffs allege that the YCSO and its deputies are liable under 42 U.S.C. § 1983 for the wrongful death of Amy Reyna based on their failure to intervene when they had a duty to stop Defendant Ryan Taylor from using deadly force against her. *Id*. at ¶ 126-28.

## DISCUSSION

I. **CLAIMS UNDER 42 U.S.C. § 1983**

    A.    <u>**Unlawful Seizure and Use of Excessive Force (Count IX(E))**</u>

Plaintiffs allege that the Yoakum County Defendants illegally seized Reyna and used excessive force in the process of seizing her. However, under the allegations of the SAC, those claims should be dismissed.

First, under the allegations of the SAC, the Yoakum County Defendants did not seize Reyna. A "seizure" occurs when an officer, "by means of physical force or show of authority, . . . in some way restrain[s] the liberty of a citizen." *United States v. Zapata*, 997 F.2d 751, 756 (10th Cir. 1993) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). While it is true that, in concert with some of the other Defendants, the Yoakum County Defendants were *attempting* to seize Reyna, they did not actually do so. "[A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989). From this language in *Brower*, the Court concludes that Taylor—an employee of the Denver City Police Department—seized Reyna when he intentionally shot her. The SAC contains no allegations to support the conclusion that Williamson or any other Yoakum County Defendant seized Reyna, only pursued her. Under *Brower*, this does not rise to the level of a seizure. Furthermore, under the allegations of the SAC, the Yoakum County Defendants applied no force to Reyna, thereby foreclosing an excessive force claim against them.

However, Plaintiffs' theory as pled in the SAC is that the Yoakum County Defendants are liable because they failed to intervene and stop Taylor from shooting Reyna. Indeed, "[a]n officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (citing *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)); *see also Casey v. City of Fed. Heights*, 509 F.3d 1278, 1283 (10th Cir. 2007) (stating first officer on scene has duty to keep arrest from getting out of hand). In order to state a Section 1983 claim for failure to intervene in the use of excessive force, a plaintiff must allege facts to support the inference that the bystander officer knew that a fellow officer was violating (or about to violate) an individual's constitutional rights through the use of excessive force, and despite having a reasonable opportunity to prevent the violation, chose not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013); *Randall v. Prince George's County*, 302 F.3d 188, 203 (4th Cir. 2002). In resolving whether a plaintiff has sufficiently alleged a bystander liability claim, the Court must also consider whether an officer "acquiesce[d] in" the alleged constitutional violation. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995); *see Baker v. Monroe Twp.*, 50 F.3d 1186, 1193-94 (3d Cir. 1995) (premising liability on senior officer's knowledge of, and acquiescence in, treatment of victim). It stands to reason, then, that a bystander officer cannot be acquiesce in violations when he had no prior knowledge of the improper acts, and no realistic opportunity to object or to intervene to prevent them. *See Mata v. City of Farmington*, 791 F. Supp. 2d 1118, 1156-57 (D.N.M. 2011) (Browning, J.) [2] To

---

[2] In an unpublished decision, *Hall v. Burke*, the Tenth Circuit stated:

> [I]t is clearly established that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive

be held liable, the officer must have had a realistic opportunity to intervene to prevent harm from occurring. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2nd Cir. 1994)); *see also Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433 (10th Cir. 1984) ("[A]lthough [officer] was not liable merely because he was present at the scene of a constitutional violation, . . . he may be liable if he had the opportunity to intervene but failed to do so."), *vacated on other grounds, City of Lawton v. Lusby*, 474 U.S. 805 (1985).

The facts alleged by Plaintiffs in the SAC preclude their claim under the theory that Williamson improperly failed to intervene in the unconstitutional seizure and use of excessive force by Taylor. According to the SAC, after Reyna's car became disabled, Taylor parked his unit on the driver's side of the Altima "and *without hesitation* got out of his unit, drew his duty weapon, walked right up to the front of Reyna's vehicle and fired three rounds into the hood of the vehicle and four rounds into Reyna." SAC at ¶ 49. By Plaintiffs' own description of events, Taylor shot Reyna immediately after parking his car beside Reyna's vehicle. Plaintiffs do not allege that Taylor planned in advance to shoot Reyna, or that he communicated any such plan to Williamson or any other Yoakum County Defendant. Thus, the Court concludes that the facts in the SAC do not demonstrate that Williamson had a reasonable opportunity to intervene before Taylor shot Reyna, or that Williamson in any way acquiesced in the shooting. Accordingly, the

---

> force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official [.] In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.

*Hall v. Burke*, 12 Fed. Appx. 856, 861 (10th Cir. June 12, 2001) (unpublished) (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

Court concludes that Plaintiffs have failed to state against Williamson a Fourth Amendment claim for unreasonable seizure and use of excessive force.

Similarly, Plaintiffs have not alleged that Corzine seized Reyna or used any force against her. Indeed, Plaintiffs allege no participation by Corzine whatsoever. Thus, they have failed to state a Fourth Amendment claim against him as well.

### B. Other Constitutional Torts

In their SAC, Plaintiffs make fleeting reference to constitutional rights other than those enumerated in the Fourth Amendment which they claim the Yoakum County Defendants violated. These include the Fourteenth Amendment [SAC at ¶ 111], due process, equal protection, and the right to necessary medical treatment. SAC at ¶ 112. Defendants argue that the SAC fails to state a claim of violation of any of these constitutional rights; Plaintiffs do not respond to those arguments.

To the extent that Plaintiffs intended to assert an equal protection claim, it must be dismissed because Plaintiffs have failed to allege that other similarly situated individuals were treated differently than Reyna. *See Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011).

Plaintiffs also briefly allude to a claim for violation of due process rights. In *Green v. Post*, 574 F.3d 1294, 1302 (10th Cir. 2009), the Tenth Circuit found that in order to state a claim against a law enforcement officer for a violation of due process rights arising from a high speed chase, a plaintiff must allege facts to support the inference that (1) defendant intended to harm the injured person, or (2) defendant had sufficient time to actually deliberate and exhibited conscience-shocking deliberate indifference toward the plaintiff. In this case, the Plaintiffs have alleged no facts that support either of these alternatives. Plaintiffs have not alleged that any Yoakum County defendant actually harmed Reyna or intended to do so. They have merely

9

alleged that Williamson followed and participated in the high speed chase of Reyna, whom they allege was the subject of a felony arrest warrant. SAC at ¶ 33-34. Mere pursuit of a person subject to an arrest warrant does not exhibit the "conscience-shocking deliberate indifference" required in *Green*. Accordingly, Plaintiffs fail to state a claim for a due process violation.

Finally, Plaintiffs make reference to a claim for failure to provide medical care. Such a claim requires allegations of deliberate indifference to serious medical needs. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). However, Plaintiffs allege that Reyna was "killed instantly" after Taylor shot her. SAC at ¶ 49. In light of that allegation, there could have been no opportunity to provide Reyna with medical care, as she died immediately after having been shot.

### C. Municipal Liability (Counts I, II, and III)

"A plaintiff suing a municipality under § 1983 for the actions of one of its officers must prove: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *See Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). As discussed above, Plaintiffs have failed to allege that any Yoakum County employee participated in a violation of Reyna's constitutionally rights. Therefore, it follows that no policy, practice, or failure to train by Yoakum County could have caused the alleged violation. Accordingly, Plaintiffs have failed to state a claim for municipal liability against the Board of County Commissioners of Yoakum County or against Corzine in his official capacity.

## II. NEGLIGENCE AND WRONGFUL DEATH (Counts VII and VIII)

The Court interprets Plaintiffs claim for wrongful death in Count VII as a tort claim brought under state law, as distinguished from the federal constitutional claim asserted in Count IX(E). Plaintiffs' claim of negligence in Count VIII also sounds in common law tort. Defendants

argue that the Texas Tort Claim Act bars these claims. Alternatively, Defendants argue that they are barred by the New Mexico Tort Claims Act. Plaintiffs respond to neither argument.

Analysis of these issues begins with the choice of laws. Here, Texas municipal defendants are being sued for actions involving the high speed chase of a New Mexico resident that began in Texas and concluded in New Mexico with the death of the fugitive. The Court must determine what state's law controls the Plaintiffs' common law tort claims for negligence and wrongful death.

Generally, "[a] federal court sitting in diversity applies the substantive law, including choice of law rules, of the forum state." *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). However, this Court has federal question jurisdiction over Plaintiffs' constitutional claims brought under 42 U.S.C. § 1983, and *supplemental* jurisdiction, not diversity jurisdiction, over their common law tort claims. The Tenth Circuit has stated that the rule set forth in *Barrett* "also applies when a federal court exercises supplemental jurisdiction over state law claims in a federal question lawsuit." *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999). Thus, the Court turns to New Mexico's choice of law rules to determine what substantive law applies to Plaintiffs' tort claims.

Where, as here, the underlying claim is categorized as a tort, "New Mexico courts follow the doctrine of *lex loci delicti commissi*—that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred." *Terrazas v. Garland & Loman, Inc.,* 140 N.M. 293, 296, 2006-NMCA-111 (Ct. App. 2006). The *lex loci delicti* rule defines the state where the wrong occurred as "the state where the last event necessary to make an actor liable for an alleged tort takes place." *Swindle v. General Motors Acceptance Corp.*, 101 N.M. 126, 128, 679 P.2d 268 (Ct. App. 1984). *See* Restatement (First) of Conflicts of Law § 377 &

cmt. a (1934). Where the elements of the underlying claim include harm, the place of the wrong is the place where the harm occurred. *Torres v. State*, 119 N.M. 609, 613, 894 P.2d 386, 390 (1995) (observing that the place of the wrong is the location of the last act necessary to complete the injury); First Restatement, *supra*, at § 377 n. 1 (observing that in determining the place of the wrong, "[t]he question is only where did the force impinge upon [the plaintiff's] body"). Applying the foregoing law to the facts of this case as alleged in the SAC, the Court concludes that the last act necessary to complete the injury to Reyna occurred when Taylor shot her. This is was the last event necessary to make any of the defendants liable for an alleged wrongful death or for negligence. Because Taylor shot Reyna in New Mexico, the law of New Mexico applies to Plaintiffs' tort claims.

The Yoakum County Defendants argue that they have sovereign immunity against Plaintiffs' tort claims under the New Mexico Tort Claims Act ("NMTCA"), NMSA 1978, § 41-4-1 et seq. Section 41-4-4(A) of that statute provides for sovereign immunity from liability from any tort for governmental entities and public employees "while acting within the scope of duty" except as waived by other provisions of the NMTCA. Section 41-4-12, in turn, waives sovereign immunity for law enforcement officers under certain circumstances. It states that immunity does not apply

> to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

The Yoakum County Defendants argue that their sovereign immunity has not been waived because Plaintiffs have not successfully alleged a plausible claim for relief under one of the

constitutional or state law torts enumerated in Section 41-4-12. *See* Doc. 46 at 26. The Court agrees.

For the reasons set forth in Part I of this Memorandum Opinion and Order, Plaintiffs have failed to state a claim for "deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico." Thus, that avenue to waiver of immunity is foreclosed. Similarly, Plaintiffs have not alleged facts to support a claim of assault or battery against Reyna by Williamson or any Yoakum County Defendant. Under New Mexico law, "causing an offensive touching, even indirectly to another's clothing and not resulting in injury, is the tort of battery." *Selmeczki v. N.M. Dept. of Corrections*, 139 N.M. 122, 131, 2006-NMCA-024 (Ct. App. 2006). *See also State v. Ortega*, 113 N.M. 437, 440–41, 827 P.2d 152, 155-56 (Ct. App. 1992) (describing tortious battery as including causing indirect contact with a person's clothing and applying these concepts to criminal battery). Here, Plaintiffs have alleged a battery by Taylor, but they have alleged no facts to support the inference that any Yoakum County Defendant caused an offensive touching to Reyna. Similarly, Plaintiffs have not alleged that Williamson or any Yoakum County Defendant committed an assault; the SAC contains no allegations that any of those defendants tried or intended to touch or apply force to Reyna. *See* NMSA 1978, Rules 14-301 through 303 (New Mexico pattern jury instructions for assault). Thus, there can be no waiver of immunity on the basis of an alleged assault.

Plaintiffs have asserted a claim against the Yoakum County Defendants for negligence. The Court need not determine whether or not Plaintiffs have alleged sufficient facts to successfully state a negligence claim against the Yoakum County Defendants, however, because even if they have, the NMTCA does not waive the Defendants' immunity from such a claim, as it is not enumerated in Section 41-4-12.

### III.     ADDITIONAL GROUNDS FOR DISMISSAL OF CLAIMS

Corzine and Williamson move to dismiss all official capacity claims against them because they are redundant of the claims against the Board of County Commissioners of Yoakum County. The Court agrees. Because Plaintiffs sued the county, it was not necessary to sue the individual defendants in their official capacities because official capacity suits are simply "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978). Thus, the official capacity claims against Corzine and Williamson will be dismissed.

Defendants argue that the Yoakum County Sheriff's Office cannot be sued because it is not a jural entity. Plaintiffs do not respond to this argument. Accordingly, because it appears that the Yoakum County Sheriff's Office does not have the capacity under Rule 17(c) to sue or be sued, Plaintiffs' claims against it will be dismissed with prejudice.

Finally, the Court agrees with Defendants that, under the New Mexico wrongful death statute Plaintiff Rosa Zubia cannot recover for her own loss as Reyna's parent. That statute provides that a surviving parent cannot share in the proceeds of recovery for wrongful death unless the decedent has no surviving spouse or child. *See* NMSA 1978, § 41-2-3(D). However, the caption of the SAC indicates that Zubia has brought claims on behalf of herself and "the minor children, H.H., H.M., and H.L." Because Reyna appears to have surviving children, Zubia's claims will be dismissed with prejudice.

**IT IS THEREFORE ORDERED** that *Yoakum County Defendants' Motion and Brief to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6)* [Doc. 46] is **GRANTED**, and all of Plaintiffs' claims against the Yoakum County Defendants are **DISMISSED** as discussed herein.

                                                                             _____
                                                                             **UNITED STATES DISTRICT JUDGE**